UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DUSTIN MEHLBRECH and LINDSEY MEHLBRECH, | ) ) ) | CIV. 11-4102-KES |
| Plaintiffs, | ) ) ) | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) ) | |
| ACUITY, a Mutual Insurance Company, | ) ) ) | |
| Defendant. | ) | |

Plaintiffs, Dustin and Lindsey Mehlbrech, brought this claim for uninsured motorist benefits against Acuity, a mutual insurance company, following an accident that caused injuries to Dustin Melhbrech. Acuity moves for summary judgment, arguing that Mehlbrech is not an insured under the policy in question. Mehlbrech resists the motion. For the following reasons, Acuity's motion for summary judgment is denied.

## BACKGROUND

Mehlbrech worked as a farmhand for Randall Farms. Docket 21 at 1. On December 30, 2009, Mehlbrech, in the scope of his employment, was driving a station wagon that was owned by Randall Farms and was insured by Acuity, a Wisconsin corporation. *Id.*; Docket 13 at 1. Mehlbrech was transporting other employees who were driving semi trucks to a bin site. Docket 24-3 at 2. During

this process, Mehlbrech was following one of the semi trucks[1] while traveling west, and he noticed that the brakes on the truck were frozen, causing the truck to leave black marks on the road. *Id.* After the semi truck stopped, Mehlbrech parked the station wagon approximately 20-30 feet in front of the semi truck and turned the flashers on before exiting the vehicle. *Id.*; Docket 27 at 3.

After exiting the station wagon, Mehlbrech retrieved a hammer from the driver of the semi truck so that he could remove the ice from the brakes. Docket 24-3 at 2. Once the brakes were fixed, Mehlbrech came out from underneath the back wheels of the semi truck and was struck by an uninsured motorist who was traveling east.[2] Docket 21 at 1. Mehlbrech was severely injured and was airlifted to the Sanford Medical Center. Docket 27 at 3.

Mehlbrech is currently seeking uninsured motorist benefits from Acuity pursuant to the insurance contract entered into between Acuity and Randall Farms. The uninsured motorists coverage provision of the Acuity policy reads as follows:

> We will pay all sums the *insured* is legally entitled to recover as compensatory damages from the owner or driver of an *uninsured*

---

[1] The parties agree that the semi truck and trailer were not owned by Randall Farms or Mehlbrech. The parties also agree that the Acuity insurance policy does not provide uninsured or underinsured motorist coverage for the semi truck or trailer. Docket 27 at 3.

[2] The uninsured motorist drove by the station wagon, which had its lights flashing, prior to hitting Mehlbrech. Docket 24-1 at 3.

> *motor vehicle*. The damages must result from *bodily injury* sustained by the *insured* caused by an *accident*.

Docket 23-5. The policy defines an "insured" as "[a]nyone *occupying* a covered auto or a temporary substitute for a covered auto." *Id.* Later, the policy defines "occupying" as "in, upon or getting in, on, out or off." Docket 23-6.

The parties agree that the station wagon that Mehlbrech was driving is a covered auto under the uninsured motorist provision. Docket 24-4 at 4.

Following Acuity's denial of Mehlbrech's claim under the policy, Mehlbrech brought this claim on July 19, 2011, seeking damages pursuant to the uninsured motorists coverage provision in the policy. Docket 1.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). Once the moving party has met its initial burden, the "nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a

genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Construction of a contract is a question of law that may be determined in a motion for summary judgment. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2730.1 at 61-63 (3d ed. 1998). Thus, when the meaning of the contract is clear, "the construction of certain provisions in an insurance policy that does not require an inquiry into the parties' intentions or the consideration of outside and conflicting evidence properly may be resolved by summary judgment." *Id.* at 90.

Both parties relied on South Dakota law in their briefs in support of their motions for summary judgment. Because the parties do not dispute that South Dakota substantive law applies to this cause of action, the court will apply South Dakota law.

## DISCUSSION

The sole issue in dispute is whether Mehlbrech is considered an insured under the insurance policy in question. Under the policy, an insured is "[a]nyone *occupying* a covered auto[.]" Docket 23-5. The parties agree that the station wagon Mehlbrech was driving prior to the accident is a covered auto

4

under the policy. Docket 24-4 at 4. Additionally, the parties agree that the semi truck and trailer that Mehlbrech was working on prior to the accident are not covered under the uninsured motorist provisions of the policy. Docket 27 at 6 ("The Acuity business auto policy does provide for liability coverage for both non-owned autos and hired autos, but not for uninsured or underinsured coverage."). Therefore, whether Mehlbrech is an insured under the uninsured motorists coverage provision in the policy rests entirely on whether he was "occupying" the station wagon at the time of the accident. As noted above, the policy defines "occupying" as "in, upon or getting in, on, out or off." Docket 23-6.

"State law governs the interpretation of insurance policies." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) (citing *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 875 (8th Cir. 2000)). Therefore, South Dakota law governs here, and under South Dakota law, contract construction is a question of law that is determined by the court. *LaMore Rest. Grp., LLC v. Akers*, 748 N.W.2d 756, 761 (S.D. 2008).

The South Dakota Supreme Court has stated:

> Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation . . . . This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.

5

*Alverson v. Northwestern Nat'l Cas. Co.*, 559 N.W.2d 234, 235 (S.D. 1997) (citations omitted). Specifically, the South Dakota Supreme Court has held that the term "occupying," as used in an insurance contract that defined occupying as "in, on, upon, getting in, on, out, off," is "ambiguous and subject to differing interpretations." *Roden v. Gen. Cas. Co. of Wisconsin*, 671 N.W.2d 622, 626 (S.D. 2003). Because the language used to define "occupying" in the case at hand is nearly identical to the language used in *Roden*, the term "occupying" as used in Acuity's insurance policy is ambiguous and requires a "factually intensive" analysis to determine whether Mehlbrech was occupying the station wagon. *Id.*

To determine whether Mehlbrech was occupying the station wagon, the court "must determine whether or not [Mehlbrech] was engaged in a transaction that was vehicle orientated and related to occupying the vehicle." *Id.* at 628. In making this determination, the court considers four factors: (1) whether there is a causal relation or connection between the injury and the use of the insured vehicle; (2) whether the person asserting coverage is in a reasonably close geographic proximity to the insured vehicle; (3) whether the person is vehicle oriented rather than highway or sidewalk oriented at the time of the accident; and (4) whether the person is engaged in a transaction essential to the use of the vehicle at the time. *Id.* at 628-29.

The first factor requires a causal relation or connection between Mehlbrech's injury and the use of the station wagon. In *Roden*, the court found that a causal connection existed between the injury and the insured vehicle. *Id.* at 628-29. There, the injured party approached the insured vehicle and was leaning up against it discussing business with his employer, who was an occupant of the vehicle at the time of the accident. *Id.*

*Roden* relies on cases from other jurisdictions in establishing the four-part test, including *Utica Mut. Ins. Co. v. Contrisciane*, 473 A.2d 1005 (Pa. 1984).[3] In *Contrisciane*, the injured party was in a separate accident that involved the insured vehicle. *Id.* at 1006. The injured party was asked by a police officer to collect information and to bring it to the police cruiser, which was parked approximately 97 feet from the insured vehicle. *Id.* at 1007. While standing next to the police cruiser, the injured party was struck by an uninsured motorist. *Id.* The Supreme Court of Pennsylvania held that a causal connection existed because "the use of the [insured] vehicle . . . precipitated the whole unfortunate series of events." *Id.* at 1009.

*Simpson v. U.S. Fid. & Guar. Co.*, 562 N.W.2d 627 (Iowa 1997), is an Iowa case that *Roden* also cited. There, the injured party was struck by an

---

[3] *Roden* is the only South Dakota case that analyzes the term "occupying" in the uninsured coverage context that has been identified by either the parties or the court. Cases from other jurisdictions that used the four-part test described in *Roden* are helpful when applying the test, particularly the cases cited within *Roden*.

7

uninsured motorist after he had parked his employer's truck, the insured vehicle. *Id.* at 628. While in the course of his employment, the injured party was repairing a water valve and was required to retrieve tools from the insured vehicle to repair the valve. *Id.* at 630 ("The truck was the valve inspector's 'toolbox on wheels.' "). He was struck by the uninsured motorist when he was on his way to the truck to get another tool. *Id.* Because the "[insured] vehicle was not merely a means of transporting persons, but was designed and equipped to aid with water valve inspection, cleanup, and repair," the court found that the insured vehicle had a causal connection to the injury. *See id.* at 631.

A third case cited in *Roden* was *Downing v. Harleysville Ins. Co.*, 602 A.2d 871 (Pa. 1992). In *Downing*, the injured party had been traveling in the insured vehicle before it stopped along the side of the road to render assistance to a person whose car was disabled due to a flat tire. *Id.* at 872. While changing the tire, the injured party was standing next to the disabled vehicle and was struck by an uninsured motorist. *Id.* The Superior Court of Pennsylvania held that the injured party's injuries "were not causally connected to the use of the [insured] vehicle, rather they occurred when he was struck by some third party while aiding another motorist with her disabled vehicle." *Id.* at 874.

The case here aligns more closely to *Roden*, *Contrisciane*, and *Simpson* than to *Downing*. In *Roden*, the injured party was leaning against the insured

8

vehicle speaking with someone inside. The insured vehicle actually played a role in the events that took place; it served as a meeting place. In *Contrisciane*, the insured vehicle was involved in the accident that led to the injured party being required to retrieve documents and stand alongside the police cruiser. Again, the insured vehicle actually played a role in the events that took place. Similarly, in *Simpson* the insured vehicle served as a "toolbox" for the injured party while he was attempting to fix the water valve. Here, the insured vehicle served as a warning device while Mehlbrech worked on the semi truck's brakes. Mehlbrech pulled the station wagon ahead of the semi truck and turned the flashers on to warn approaching travelers. Ideally, approaching travelers would see the flashing lights of the station wagon and be on alert for hazardous activity, thus being able to avoid the type of accident that occurred here. Unfortunately for Mehlbrech, the warning device, *i.e.*, the station wagon, did not prevent this accident even though the uninsured motorist encountered the station wagon prior to hitting Mehlbrech.

Furthermore, the facts here are distinguishable from the facts in *Downing*. In *Downing*, the injured party had no connection to the other vehicle on the road. As discussed in detail below, Mehlbrech only exited the station wagon and fixed the brakes so he could continue his use of the station wagon. Additionally, the insured vehicle in *Downing* did not play a role in the accident, whereas here the station wagon served as a warning device.

The station wagon played an important role in the events leading up to the accident. In fact, the failure of the station wagon's flashing lights to warn the uninsured motorist may be the very reason that Mehlbrech was injured. Thus, there is a causal connection or relation between the station wagon and Mehlbrech's injury.

The second factor requires Mehlbrech to have been in a reasonably close geographic proximity to the station wagon at the time of the accident. Courts generally find that this factor is easily satisfied. *See, e.g., Contrisciane*, 473 A.2d at 1007-09 (finding that the injured party was occupying the insured vehicle when he was approximately 97 feet away from it). The parties agree that the station wagon was approximately 20-30 feet in front of the semi truck. As a result, the court finds that Mehlbrech satisfies this factor.

The third factor requires that Mehlbrech was vehicle oriented rather than highway oriented at the time of the accident. In *Roden*, the South Dakota Supreme Court found that this factor was met because the injured party was an employee talking about business with his supervisor, who was sitting in the insured vehicle. 671 N.W.2d at 629 ("That was his sole orientation rather than any connection with what was going on behind or to the side of him with a work project or otherwise.").

A case cited by *Roden* stated that when considering the third factor the court should consider "the nature of the act engaged in at the time of the injury

and the intent of the person injured." *Gorham v. Guidant Mut. Ins. Co.*, 80 F. Supp. 2d 540, 548 (D. Md. 2000). In *Gorham*, the injured party had waved down the insured vehicle, which was driven by the insured party's husband, so that she could replace her husband as the driver of the insured vehicle. *Id.* at 542. While moving items from one vehicle to the other, the injured party was struck by an underinsured motorist. *Id.* The court found that the injured party was vehicle oriented because she was in the "course of retrieving her eyeglasses *for the purpose* of driving the [insured vehicle]." *Id.* at 548 (emphasis added).

In *Contrisciane*, the injured party's *purpose* for talking to the police officer was to properly handle the prior accident that involved the insured vehicle so he could continue on with his journey. 473 A.2d at 1009. In *Simpson*, the injured party's *purpose* was to fix the water valve. 562 N.W.2d at 631. He was vehicle oriented because he was required to use the insured vehicle to fix the valve because it served as his "toolbox" throughout the process. *See id.* at 631.

Contrastingly, the court in *Downing* found that the injured party "became highway-oriented when he left the [insured vehicle] for the purpose of helping the stranded motorist with her disabled vehicle." 602 A.2d at 874 (quotations omitted).

Again, the facts in this case require reasoning in line with *Roden*, *Gorham*, *Contrisciane*, and *Simpson*. As noted above, Mehlbrech's employment task was to use the station wagon to transport the semi drivers back to the

11

farm. Mehlbrech had been assigned use of the station wagon and was in fact using the station wagon to complete the task. *See Roden*, 671 N.W.2d at 631-32 (Amundson, J., dissenting) (noting that being assigned use of the insured vehicle and actually using the insured vehicle suggest that one is vehicle oriented). Mehlbrech only exited the station wagon and fixed the semi truck's brakes so that he could continue using the station wagon to transport the semi drivers. Indeed, without fixing the brakes, there would not have been a driver to transport. Put differently, Mehlbrech's *purpose* for fixing the brakes was to make it possible for the semi truck to reach its destination so that Mehlbrech could then use the station wagon to transport the driver back to the farm. At all times, Mehlbrech was focused on using the station wagon to transport the semi drivers to the farm.

From a narrower perspective, Mehlbrech was in the process of returning to the station wagon at the time of the accident. Mehlbrech had just finished removing the ice from the brakes and was returning to the station wagon when he was hit. Because Mehlbrech's overarching purpose for fixing the brakes on the semi truck was so that he could continue using the station wagon to transport the semi driver and Mehlbrech's immediate purpose just prior to the accident was to return to the station wagon, the court finds that Mehlbrech was vehicle oriented at the time of the accident.

The fourth and final factor is that Mehlbrech must have been engaged in a transaction essential to the use of the station wagon. In *Roden*, the insured vehicle was serving as an office at the time of the accident. 671 N.W.2d at 629. "There was no other alternative office for [the] meeting to take place." *Id.* As a result, the South Dakota Supreme Court held that the injured party was engaged in a transaction essential to the use of the covered vehicle. *Id.*

The court in *Contrisciane* also found that the injured party was engaged in a transaction essential to the use of the station wagon. 473 A.2d at 1009. "At all times [the injured party] was engaged in transactions essential to his continued use of the vehicle, and it was only because of the mandated requirements of the statute and the police officer that [the injured party] found himself physically out of contact with his vehicle." *Id.* Similarly, the court in *Simpson* concluded that the injured party was "clearly engaged in an activity relating to the use of the specialized truck." 562 N.W.2d at 631.

In *Downing*, the court found that the injured party failed to satisfy the fourth factor. 602 A.2d at 874-75. The injured party "was not engaging in a transaction essential to the use of the [insured] vehicle at the time of the accident. In fact, [the injured party's] actions prior to the accident did not in any manner involve the [insured] vehicle." *Id.*

The facts here point to a determination that Mehlbrech was engaged in activities essential to the use of the station wagon. Similar to *Contrisciane*,

fixing the brakes was essential to Mehlbrech's continued use of the station wagon. Mehlbrech would not have been able to complete his task of transporting the semi driver in the station wagon if the brakes on the semi truck had not been fixed. Thus, fixing the brakes on the semi truck was essential to the continued use of the station wagon. Moreover, the station wagon assisted Mehlbrech in fixing the brakes because it served as a warning device, making the facts here analogous to the facts in *Roden* and *Simpson*. Mehlbrech's actions at the time of the accident were interrelated to the use of the station wagon, and, therefore, the fourth factor is satisfied.

     After applying the four-factor test established in *Roden,* the court finds that under South Dakota law Mehlbrech was occupying the station wagon at the time of the accident. This determination is further supported by the South Dakota Supreme Court's strict rules of construction that require an interpretation most favorable to the insured when the provisions of an insurance policy are fairly susceptible to different interpretations. *See Alverson*, 559 N.W.2d at 235. Additionally, as the South Dakota Supreme Court pointed out, "notwithstanding the extensive litigation over the contradictory interpretations of [occupancy], the policy definition of 'occupancy' remains essentially unchanged today. In light of this history, it is not unreasonable to require insurers to specifically exclude this type of nexus with an auto if they

claim it excluded from coverage." *Roden*, 671 N.W.2d at 630 (Zinter, J., concurring).

## CONCLUSION

As a matter of law, Mehlbrech was "occupying" the station wagon at the time of the accident as defined by the South Dakota Supreme Court. Because he was occupying the station wagon, Mehlbrech is an insured under Acuity's uninsured motorist coverage policy. Accordingly, it is

ORDERED that defendant's motion for summary judgment is denied.

Dated October 3, 2012.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE